# EXHIBIT 1

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| BERNARD E. BENNETT and ELSIE M. BENNETT, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE LIFE INSURANCE COMPANY, and AGENT DOE,<br><br>Defendants. | CJ-2021-3174 FILED IN DISTRICT COURT<br>OKLAHOMA COUNTY<br><br>JUL 29 2021<br><br>Case No: RICK WARREN<br>COURT CLERK<br>111 _____<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## PETITION

1. Plaintiffs, Bernard ("Bud") Bennett and Elsie Bennett, are married and live in Edmond, Oklahoma.

2. Defendant, Allstate Life Insurance Company ("Defendant Allstate" or "Allstate"), is a foreign, for profit insurance company.

3. Defendant "Agent Doe" is the agent who sold the policy for Allstate and represented how it worked and what it would cover. This person's name is currently unknown because Allstate has refused to provide the contact information for this person. Allstate has taken the unusual position of saying it does not know who sold this insurance to Plaintiffs. None of the documents provided to Plaintiffs at and after the sale, like the application and correspondence, say who sold the insurance for Allstate. Plaintiffs intend to compel the contact information for the agent and join that person in this litigation.

4. Mr. and Mrs. Bennett bought a certificate (policy) of insurance from Defendant Allstate with an effective date of November 9, 1991 and have paid premiums to Allstate since that time. They were both insured under this insurance certificate number 999034721 at all material times herein.

5. Allstate certificate of insurance number 999034721 was issued to Plaintiffs under master policy number 64403061 that Allstate Life Insurance Company issued to Sears, Roebuck and Co.

6. Mr. and Mrs. Bennett had to leave their home and move into an assisted living facility in May 2019 because they were both chronically ill and unable to take care of themselves and perform necessary activities of daily living without assistance of trained care providers in a facility setting.

7. Mr. and Mrs. Bennett made claims for policy benefits under their Allstate certificate of insurance and provided all information Defendant requested and otherwise complied with all conditions precedent to coverage and payment of benefits.

8. Allstate Life Insurance Company denied Mr. and Mrs. Bennett's claims which has caused Plaintiffs to have to pay the charges that the insurance was supposed to cover. In addition, Plaintiffs have had to continue to pay the premiums for this insurance because Allstate is not waiving the premiums as promised.

### COUNT I

9. The following facts concerning the representations of Defendant through its agent constitute the most complete set of facts and circumstances that Plaintiff can currently provide regarding the presentation and sale of the subject insurance. Additional facts and circumstances may become known or apparent as discovery in this case progresses and will be supplemented as necessary. In mid-October 1991, Mr. and Mrs. Bennett met with a sales agent from Allstate Life Insurance Company who had come to their home in Oklahoma City to sell them insurance. Mr. and Mrs. Bennett bought this insurance because Allstate's agent told them it would cover them when they needed help with daily activities as they got older and needed to live in a facility with trained care providers. The agent further told the Bennett's this policy covered all levels of care

including skilled, intermediate and custodial. The sales agent provided a sales brochure and told Mr. and Mrs. Bennett that the Allstate policy would protect their financial security, that it was a smart investment for their future and that many people who require care and do not have this kind of insurance are financially unable to get the care they need. Defendant's agent further stated there were three levels of coverage were offered; Plan A which paid $120 a day, Plan B which paid $80 a day, and Plan C which provided $50 a day. Mr. and Mrs. Bennett selected Plan B with a premium refund option. Mr. Bennett was sixty-six (66) years old at the time and Mrs. Bennett was sixty-one (61) years old. During the discussions with Mr. and Mrs. Bennett, Defendant's agent specifically represented that all levels of care were covered under this policy – skilled nursing care, intermediate care and custodial care – if either of them needed assistance with activities of daily living either at home or in a facility. The agent explained and represented that there was a thirty-day waiting period after admission to a facility before benefits would start but then benefits would be paid at $80 per day for up to seven (7) years. This daily amount would increase over time. The agent further explained and represented that the premiums would be waived when either of them were receiving policy benefits. Defendant's agent did not tell Mr. and Mrs. Bennett that once they got old and frail enough to actually have to go into a facility to obtain assistance with their activities of daily living, that they still could be denied coverage just because the facility license did not say "nursing home" on it. Mr. Bennett questioned Allstate's agent about whether he would have to go to a nursing home to be covered because he did not want a policy that would require him or his wife to live in a nursing home to get the coverage. Mr. Bennett discussed with the agent that he wanted a policy which would cover both of them living together in a facility if either he or his wife required care in a facility. Defendant's agent said they would not have to live in a nursing home because all levels of care – skilled, intermediate or custodial – were covered if either of them had to live in a facility for help and assistance with their activities of daily living. Defendant's agent

3

further stated that there would be annual automatic benefit increases and that this was good and dependable coverage for when they needed care and assistance due to old age. Mr. and Mrs. Bennett believed the Allstate agent and relied upon the representations as to coverage. Their reliance was reasonable because the insurance agent's representations and assurances appeared to be consistent with Allstate Life Insurance Company's sales brochure which the agent provided to Mr. and Mrs. Bennett at the time of the sale.

10. Mr. and Mrs. Bennett reasonably relied on the representations of Allstate's soliciting agent and on the representations in the Allstate sales brochure along with the representations in Allstate's October 25, 1991 letter delivering the insurance policy and bought this long term care insurance.

11. The representations of Allstate's soliciting agent and in the brochure that Allstate required its agents to use in selling this insurance were false because Allstate has a claim practice of requiring the facility to have a "nursing home" license among other requirements not clearly spelled out and explained in the sale and presentation of these insurance policies. The omission and concealment of Allstate's true claim practice was material and caused Plaintiffs to purchase this insurance.

12. As a direct result of the above-described false representations, concealment and deceit by Allstate Life Insurance Company, Plaintiffs have suffered emotional distress, embarrassment, financial hardship, loss of policy benefits and other consequential damages.

13. Defendants' actions were reckless and wanton, willful and malicious and Plaintiffs are entitled to recover punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, Allstate Life Insurance Company and Agent Doe, for both compensatory damages and punitive damages, with statutory interest and costs of this action, for a statutory attorney fee and for such other relief as may be

appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

## COUNT II

Plaintiffs incorporate all previous allegations and further allege and state:

14. Defendant, Allstate Life Insurance Company, breached the insurance contract and the implied covenant of good faith and fair dealing in the handling of Plaintiffs' claims, as a matter of routine business practice in the denial of such claims, in the following respects by:

   a. failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew Plaintiffs were entitled to those benefits;

   b. failing to properly investigate Plaintiffs' claims under the policy including failure to properly investigate grounds for denial of policy benefits;

   c. withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid;

   d. refusing to honor Plaintiffs' claims for reasons contrary to the express provisions of the policy and Oklahoma law;

   e. refusing to honor Plaintiffs' claims by applying restrictions not contained in the policy;

   f. refusing to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy and Oklahoma law;

   g. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims;

   h. not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims once liability for payment had become reasonably clear;

   i. forcing Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

   j. failing to properly evaluate any investigation that was performed;

   k. refusing to consider the reasonable expectations of the insureds by handling claims and restricting benefits in a manner that is inconsistent with the policy language and promises made to the insureds at the time of the sale of the insurance; and

l.      refusing to investigate how the policy was presented at the time of sale;

all in violation of the implied covenant of good faith and fair dealing and in breach of the insurance contract resulting in financial benefit to the Defendant, Allstate Life Insurance Company.

15.     As a direct result of the above-described wrongful acts and omissions by Defendant, Allstate Life Insurance Company, Plaintiffs have suffered loss of the insurance coverage promised by Defendant, mental and emotional distress, physical bodily injury, embarrassment and consequential financial loss.

16.     The acts and omissions of Defendant, Allstate Life Insurance Company, were reckless and wanton or intentional and malicious such that Plaintiffs are entitled to recover punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, Allstate Life Insurance Company, for both compensatory damages and punitive damages, with statutory interest and costs of this action, for a statutory attorney fee and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL ENGEL & COLE

By: _____
Steven S. Mansell, OBA #10584
Kenneth G. Cole, OBA #11792
Keith F. Givens, OBA #16501
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK  73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
Email: smansell@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**ATTORNEYS FOR PLAINTIFF**